IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ANTWAIN ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:02-CV-0192 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO AFFIRM DECISION OF THE COMMISSIONER**

Plaintiff ANTWAIN ADAMS brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE B. BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security income (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

Plaintiff applied for SSI benefits on October 16, 2000, alleging his disability began on March 20, 2000. (Tr. 62-64). Plaintiff described his disabling condition as "degenerative joint disease right hip or question of spine bifida at L5." (Tr. 75). In describing how his condition limits his ability to work, plaintiff stated, "Can't walk for very long; can't bend down too far, can't squat;

can't lift very much." Plaintiff averred his condition first bothered him on December 31, 1991, rendering him unable to work that same year, and continues to cause him pain. Plaintiff noted he completed the 12th grade, and identified past work as a grocery stocker (1990), hotel cleaning service (1988), a cook (1987), dishwasher (1987), paper stacker (1986), and a grain sampler (1985). (Tr. 79; 82). At the time he filed his application, plaintiff was 35-years-old. (Tr. 62). Plaintiff came to the interview with the Social Security Administration (SSA) using a cane, and the interviewer observed plaintiff having difficulties with walking. (Tr. 92).

On January 4, 2001, the SSA, identifying plaintiff's primary diagnosis as "avascular necrosis status post bilateral hip replacements," denied plaintiff benefits determining plaintiff's condition, although currently severe, was expected to respond to treatment and would not be disabling for 12 continuous months.[1] (Tr. 41-47). Plaintiff requested the SSA reconsider its initial determination, explaining he did not agree with the determination because he was "unable to work due to knee replacement." (Tr. 48). On April 18, 2001, the SSA, again identifying plaintiff's primary diagnosis as "avascular necrosis, status post bilateral hip replacements," denied plaintiff benefits upon reconsideration. (Tr. 40; 50-52).[2]

Plaintiff, represented by legal counsel, requested a hearing on his SSI application before an Administrative Law Judge ("ALJ"), explaining he disagreed with the determination on

---

[1] The SSA explained plaintiff's "condition is not expected to remain severe enough for 12 months in a row to keep you from working. . . . You said you were disabled because of a right hip replacement. Medical reports show some improvement has occurred. You have described various limitations caused by your symptoms and the evidence does show you have these limitations. The medical evidence shows that although your condition is currently severe, it is expected to respond to treatment and will not be disabling for 12 continuous months. Although some kinds of work will not be possible, this condition will allow other less demanding work." (Tr. 47).

[2] The SSA explained plaintiff's "condition is not severe enough to keep you from working. . . . You said you were disabled because of bilateral hip replacements, with hip and leg pain. This causes you some pain and discomfort. However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines. Although you said you have these conditions, the evidence does not show that your ability to perform basic work activities is as limited as you indicated. Although some kinds of work are not possible, your condition does allow other less demanding work. This conclusion takes into consideration your age and education." (Tr. 52).

reconsideration because he is "disabled due to significant knee problems." (Tr. 53). On January 10, 2002, the ALJ conducted an administrative hearing in this case.[3] (Tr. 23-39). On March 7, 2002, the ALJ rendered an unfavorable decision, finding plaintiff was not disabled at any time through the date of the decision. (Tr. 9-17). The ALJ determined plaintiff has the medically determinable impairments of avascular necrosis, status post bilateral hip replacement, and osteoarthritis, impairments that are "severe" within the meaning of the Social Security Regulations. The ALJ further found plaintiff's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 13). The ALJ noted he specifically reviewed Section 1.03 of the listings, but found "no evidence supporting functional limitations occurred after surgery to meet or equal this listing." (Tr. 13-14). The ALJ further found the "objective medical records, while documenting the existence of severe musculoskeletal impairment, are inconsistent with [plaintiff's] complaints of ongoing severe pain." (Tr. 14). Referencing the medical evidence, the ALJ found plaintiff's testimony that he is limited to standing no more than 20-25 minutes and sitting no more than 30 minutes before experiencing pain was not credible. The ALJ also noted that plaintiff's testimony as to the persistency of pain was inconsistent with his activities of daily living and ability to tend to his personal care needs. (Tr. 15). The ALJ determined that while the medical evidence supported plaintiff's functional limitations, there was nothing in the record to support a finding that these limitations precluded the performance of all work in the economy.

Noting a DDS residual functional capacity (RFC) assessment for sedentary work with postural limitations allowing only occasional stooping, crouching, and crawling was consistent with

---

[3] In her request for an administrative hearing, plaintiff alleged her pain had progressed throughout her body, accompanied by a bad headache. (Tr. 84-85). She also averred that on some days, the "pain is unbearable" and is not controlled by medication.

his evaluation of the record , the ALJ found plaintiff retained the RFC for a limited range of sedentary work. (Tr. 15). The ALJ then found plaintiff had no "past relevant work" as defined in the Regulations as plaintiff had been incarcerated for most of the past fifteen years and what work had been performed within the past fifteen years did not reach the level of "substantial gainful activity."

The ALJ noted plaintiff was 36-years-old which was considered a "younger individual" under the regulations, had a high school education, and had no transferable skills. The ALJ then noted the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations were to be used as a framework for his decision when a claimant could not perform all of the exertional demands of work at a given level of exertion and/or had any nonexertional limitations. He further noted the Guidelines could only be used to direct an unfavorable decision if a claimant had the exertional RFC to perform "substantially all" of the seven primary strength demands required by work at a given level of exertion and there were no nonexertional limitations. The ALJ noted that "[w]hen all of the criteria of a Medical-Vocational Rule are met, the existence of occupations in the national economy is met by administrative notice." (Tr. 16).

After setting forth the limits of sedentary work, the ALJ found plaintiff had the exertional capacity to perform substantially all of the requirements of sedentary work. Considering plaintiff's age, education, and work experience, the ALJ applied the Guidelines to find plaintiff was not disabled. (Tr. 16). Accordingly, the ALJ concluded there were jobs, existing in significant numbers in the national economy, which plaintiff was able to perform, and that plaintiff retained the capacity to adjust to work that existed in significant numbers in the national economy. The ALJ thus concluded plaintiff was not under a disability at any time through the date of his decision.

Upon the Appeals Council's denial of plaintiff's request for review on May 9, 2002, the

ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner. (Tr. 6-7). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff contends the Commissioner's decision that plaintiff is not disabled is not supported by substantial evidence because:

1. The ALJ failed to properly assess whether plaintiff's condition met the requirements of the Listings;

2. The ALJ's finding as to plaintiff's residual functional capacity (RFC) is not supported by substantial evidence because:

    a. the ALJ failed to consider the extent of plaintiff's limitations or restrictions and the extent of the erosion of the occupational base

    b. the ALJ failed to make an individualized determination considering the impact of plaintiff's limitations on the number of sedentary jobs available in the national economy;

    c. the ALJ failed to discuss plaintiff's ability, or lack thereof, to perform sustained work activities in an ordinary work setting on a regular and sustained basis;

    d. the ALJ failed to make a "function-by-function" assessment of plaintiff's RFC;

      e.      the ALJ failed to consider plaintiff's combination of impairments; and

      f.      the ALJ failed to carefully consider the extent that the sedentary occupational base has been eroded by plaintiff's exertional and nonexertional (i.e., pain) limitations and make specific findings thereof.

3.      The ALJ failed to apply the correct standard of law in determining the "Grid Rules" required a finding of not disabled.

## III.
## FINDINGS AND CONCLUSIONS

The ALJ adopted a DDS residual functional capacity (RFC) assessment for sedentary work with postural limitations, and found plaintiff's "capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations." The ALJ thus found plaintiff retains the RFC for a "limited range of sedentary work" which he described as "substantially all of the full range of sedentary work." The ALJ determined this level of restriction would not preclude the performance of work existing in significant numbers in the national economy as directed by Medical-Vocational Guideline 201.27.

### A.
### The ALJ Properly Assessed Whether Plaintiff's Condition Meets the Requirements of the Listings

Plaintiff initially argues the ALJ erred in finding plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Specifically, plaintiff contends the ALJ should have found his impairments meet the requirements for Listings 1.02 and/or 1.03.

To meet Listing 1.02(A), *major dysfunction of a joint(s)*, plaintiff must show he suffers from (1) a gross anatomical deformity of a joint, (2) chronic pain and stiffness of the joint, (3) with signs

of limitation of motion or other abnormal motion of the affected joint, (4) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint, (5) involvement of one major peripheral weight-bearing joint (hip, knee or ankle), (6) resulting in *inability to ambulate effectively*.  To meet Listing 1.03, plaintiff must show he (1) has had reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, (2) with *inability to ambulate effectively*, (3) and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.  The *inability to ambulate effectively* on a sustained basis can be for any reason, including pain associated with the underlying impairment, but the inability to ambulate effectively must have lasted, or be expected to last, for at least twelve (12) months. Section 1.00(B)(2)(a).  Section 1.00(B)(2)(b)(1) defines the *inability to ambulate effectively* as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Subsection (2) further explains that to ambulate effectively:

> [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment. . . .  Therefore, examples of ineffective ambulation include, but are not limited to, the *inability to walk without the use of a walker, two crutches or two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

(emphasis added).  Plaintiff specifically complains of the ALJ's findings that there is "no evidence supporting functional limitations occurred after surgery to meet or equal this listing," and that

plaintiff's recovery periods following his 1999 and 2000 hip replacement surgeries were "considered uneventful as no abnormal pathology was reported." Plaintiff also complains of the ALJ's reference to plaintiff's August 2001 surgery for "removal of loose body" in the right hip region and November 2001 surgery for release of a nerve in the right thigh as "medical procedures [] reported [as] 'uneventful.'" (Tr. 14). Plaintiff cites the Court to medical records demonstrating his complaints of ongoing severe pain and limitations of mobility, and notes the medical records do not document what, if any, long term relief plaintiff will obtain from his surgeries. Plaintiff notes the ALJ hearing took place just after plaintiff's last procedure.

Defendant contends plaintiff does not meet Listings 1.02 or 1.03 because the evidence does not demonstrate (1) plaintiff's inability to effectively ambulate or markedly limiting ability to walk or stand; (2) indicate he was prescribed the use of an assistive device; or (3) contain any post-hip replacement evidence of major joint dysfunction, gross anatomical deformity, or medical imaging evidence of significant joint space narrowing or bony destruction. Defendant maintains the medical evidence referenced by plaintiff shows only complaints of pain and treatment for meralgia paresthetica, a condition which involves nerve entrapment by the inguinal ligament. Defendant concludes this evidence does not document any of the necessary *objective* medical findings to establish disability under Listings 1.02 or 1.03.

In his reply, plaintiff maintains he has, in fact, shown the Court how his medical history demonstrates that he meets the requirements of Listings 1.02 and/or 1.03. Plaintiff again cites to post-hip replacement medical records documenting persistent pain in his right hip, spasms, an inability to raise his right leg, and a failure to return to normal mobility or weight-bearing ability.

The relevant time period at issue is March 20, 2000, plaintiff's onset date, through March 7,

2002, the date of the ALJ's decision. On March 20, 2000, plaintiff underwent right hip replacement surgery in an attempt to alleviate a chronic, debilitating condition. Medical reports cited by plaintiff demonstrate the right hip replacement was successful in treating plaintiff's condition, but also clearly document that plaintiff continued to experience pain after his right hip replacement in March 2000. Two subsequent procedures – one to remove loose body material found in the right hip region in August 2001, and one to release an impinged nerve in the right hip region in November 2001 – were performed to remedy the pain plaintiff was continuing to experience. The record does not contain any medical evidence subsequent to this last surgery.

The cited reports for the period at issue demonstrate plaintiff continued to report experiencing pain in his right hip during the relevant time period. The reports do not, however, reflect that plaintiff's pain resulted in an *inability to ambulate effectively* as defined by the regulations set forth above. There are no such statements or objective findings in the medical reports of record to support such a functional limitation. Consequently, the ALJ's finding that plaintiff's condition was not severe enough to meet or medically equal a listed impairment under Listings 1.02 or 1.03, although only marginally supported, is supported by "more than a scintilla" of evidence, *i.e.*, the finding is supported by substantial evidence in the record as a whole, and will not be overturned. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir.2001). Plaintiff's first ground should be DENIED.

B.
The ALJ's Finding as to Plaintiff's RFC is Supported by Substantial Evidence

In his second allegation, plaintiff appears to argue the ALJ's determination that plaintiff has the RFC for a "limited range of sedentary work" is not supported by substantial evidence. Although

it is not clear, it appears plaintiff challenges the RFC finding on the bases that (1) the ALJ failed to discuss the extent of the erosion of the occupational base due to plaintiff's limitations or restrictions,[4] and (2) failed to make a function-by-function assessment of plaintiff's RFC to assess plaintiff's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.

In response, defendant argues the ALJ's finding that plaintiff has the RFC to perform a "limited range of sedentary work" is supported by substantial evidence. Defendant notes the ALJ specifically adopted by reference a state agency RFC assessment which found plaintiff retained the ability to lift and carry 10 pounds occasionally, less than 10 pounds frequently, stand and walk for about 6 hours of an 8-hour work day, and sit for about 6 hours per 8-hour work day. This state agency RFC assessment also included a postural limitation to "occasionally" stooping, crouching, and crawling.[5] Defendant argues the ALJ's specific adoption of the state agency physician's expert opinion assessment clearly incorporated a "function-by-function" assessment of plaintiff's abilities into the ALJ's decision. Defendant notes the RFC assessment addressed all the functions of plaintiff's exertional capabilities, as well as the non-exertional areas. Specifically, defendant argues the state physician, and the ALJ, by his adoption of the state agency RFC assessment, found no non-exertional limitations other than the three postural limitations limiting plaintiff to occasionally stooping, crouching and crawling. Defendant argues the ALJ's adoption of this medical opinion evidence sufficiently indicated his belief as to which postural limitations plaintiff suffers.

---

[4] Plaintiff cites 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(3) as requiring an ALJ to make an "individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience."

[5] Defendant maintains this is the only medical opinion of record regarding plaintiff's physical capacity.

Defendant concludes the ALJ determination of plaintiff's RFC is supported by sufficient evidence.

In reply, plaintiff argues the ALJ's decision was internally inconsistent and incomplete, noting the decision finds plaintiff has the RFC for a "limited range of sedentary work" but also found plaintiff can perform "substantially all of the requirements of sedentary work." Nonetheless, plaintiff contends that either designation amounts to a finding that plaintiff is "limited to less than a full range of sedentary work" and that the ALJ did not consider all of the agencies' rules and regulations that require a discussion on the erosion of the job base for claimants "limited to less than a full range of sedentary labor." Plaintiff maintains the lack of factual findings in the ALJ's decision makes his decision unsupportable. Plaintiff concludes the evidence demonstrates he suffers from a severe and debilitating condition which defendant concedes limits him to less than a full range of sedentary labor.

The undersigned finds the ALJ's reliance on, and specific reference to, the DDS residual functional capacity assessment, together with his findings regarding plaintiff's medical records and determination that such DDS findings were consistent with his evaluation of the record, while not the best method, was a sufficient function-by-function analysis for purposes of determining plaintiff's RFC. Plaintiff does not set forth any specific reasons as to why he does not retain the RFC for a "limited range of sedentary work," rather, plaintiff argues reversible error on the ALJ's part for failing to separately set out, in his decision, the function-by-function analysis of his impairments. Plaintiff has not demonstrated how the postural restrictions would have altered the RFC finding that plaintiff can perform a limited range of sedentary work, nor has plaintiff shown how such postural limitations would have reduced his ability to perform sedentary work. Plaintiff has not shown by objective evidence that he does not have the RFC for

a "limited range of sedentary work." It is true plaintiff testified that despite his post-hip replacement surgeries, he was unable to work due to severe, ongoing pain, and limitations of mobility but, as with any social security case, the statutorily mandated function of the ALJ includes weighing the evidence and assessing the credibility of the witnesses. *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) ("The Secretary, not the courts, has the duty to weigh evidence, resolve material conflicts in the evidence, and decide the case."). Here, the ALJ found the objective medical records, while documenting an impairment, were inconsistent with plaintiff's complaints of ongoing severe pain. (Tr. 14). The ALJ further found plaintiff's testimony regarding extreme limitations in mobility were not credible. Review of the objective medical records reveals the ALJ's decision that plaintiff has the RFC to perform a "limited range of sedentary work" is supported by substantial evidence. Plaintiff's second ground should be DENIED.[6]

## C.
### The ALJ Properly Applied the Grid in Determining Plaintiff is not Disabled.

In this case, the ALJ decided plaintiff's non-disability through application of the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ found plaintiff was limited to sedentary work, with the addition of three postural limitations assessed by the state agency physician: "occasionally" stooping, crouching, and crawling." The ALJ then found plaintiff had "the exertional capacity to perform substantially all of the requirements of sedentary work," and applied Rule 201.27 of the Grid to find plaintiff not disabled.[7]

---

[6] Plaintiff's allegation that it was error for the ALJ not to discuss the extent of the erosion of the occupational base due to plaintiff's limitations or restrictions, is discussed below.

[7] Rule 201.27 addresses circumstances involving a younger individual age 18-44, who is a high school graduate or more, with either unskilled previous work experience or no previous work experience, with a RFC limited to sedentary work.

Plaintiff contends the ALJ improperly applied the Grid in reaching his finding of "not disabled." Plaintiff notes Rule 201.27 references Rule 201.00(h) to determine disability. As pertinent to this discussion, Rule 201.00(h) states that "age is a more positive factor for those who are under age 45 and is usually not a significant factor in limiting such an individual's ability to make a vocational adjustment . . . . However, a finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule *and* who do not have the ability to perform a full range of sedentary work." (emphasis added). That Rule then gives examples of situations where adverse factors "significantly compromise" and "further narrow" the only range of sedentary work for which an individual is qualified, thus making a finding of disabled appropriate. Plaintiff notes that if the Grids fail to accurately describe a plaintiff's particular limitation, the ALJ may not rely on them alone to show the availability of jobs for the plaintiff. Plaintiff contends that as the ALJ in this case found plaintiff could only perform a "limited range" of sedentary work, the blanket application of the sedentary grid rule was in error because it indicates a person capable of performing SGA at a sustained sedentary level.

Defendant argues the ALJ properly used the Grid Rules to direct a conclusion of not disabled in this case. Defendant maintains the ALJ's application of the Grid despite plaintiff's additional postural limitations is consistent with Social Security Ruling (SSR) 83-14 which directs that "[w]here it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule . . . would not be affected." Defendant maintains the ALJ found plaintiff's postural limitations permitting only occasional stooping, crouching and crawling would not result in significant erosion of the

sedentary occupational base, and as a result, plaintiff could perform "substantially all of the requirements of sedentary work." Defendant also argues this finding is consistent with SSR 83-10 which notes that "[b]y its very nature, work performed primarily in a seated position entails no significant stooping." Defendant notes the impact on the occupational base of limitations in stooping, crouching and crawling are specifically addressed in SSR 83-15 which states:

> If a person can *stoop occasionally* (from very little up to one-third of the time) in order to lift objects, the *sedentary . . . occupational base is virtually intact. . . . This is also true for crouching . . . . [C]rawling . . .* is a relatively rare activity even in arduous work, and *limitations on the ability to crawl would be of little significance* in the broad world of work.

(emphasis added). Defendant concludes the ALJ's finding that the available sedentary occupational base would not be significantly eroded by plaintiff's limitations to occasional stooping, crawling, and crouching is consistent with stated agency policy. Defendant argues the postural limitations do not have more than a minimal effect on his ability to perform sedentary work and, thus, such limitations do not significantly erode plaintiff's RFC for sedentary work. Defendant concludes the ALJ was thus entitled to rely on the Grid Rules.

Resolution of this case turns on whether Social Security Ruling 83-14 allows an ALJ to apply the Medical-Vocational Guidelines where it is determined that any additional limitations or restrictions have very little effect on the exertional occupational base. The defendant has also cited SSR 83-15 as evidence that the sedentary occupational base is virtually intact for a person who can stoop occasionally, as well a crouch occasionally. Crawling, per SSR 83-15, is of little

significance. Defendant has cited *Robinson v. Sullivan*, 956 F.2d 836 (8th Cir. 1992), in support of the contention that the postural limitations did not erode the available work base. In *Robinson*, the court found limitations such as the ones in this case did not significantly effect an RFC for light or sedentary work.

In his reply brief, plaintiff contends the medical evidence reflects plaintiff has more limitations than merely being restricted to occasional stooping, crouching and crawling. Plaintiff does not, however, challenge SSR 83-14 or SSR 83-15 themselves. Therefore, based upon a determination that substantial evidence does support the ALJ's determination of plaintiff's RFC, SSR 83-14 and SSR 83-15 do permit the ALJ to use the guidelines in this case.

Consequently, even though testimony from a VE would have clarified this issue, this Court does not find the ALJ's use of the guidelines to be reversible error. Although the ALJ found plaintiff is limited to occasional stooping, crawling, and crouching, and that such limitations relegate him to an RFC for a "limited range of sedentary work," it does not appear such limitations erode the occupational base for sedentary work more than to a minimal degree, if at all. Consequently, the ALJ was entitled to rely upon the Grid to determine plaintiff was not disabled. Moreover, although the better practice would have been for the ALJ to have further discussed the extent of the erosion of the occupational base due to plaintiff's limitations by stating more than plaintiff "has the exertional capacity to perform substantially all of the requirements of sedentary work," the undersigned does not find plaintiff was prejudiced by the ALJ's failure to further elaborate. Plaintiff's third ground should be DENIED, as well as that part of plaintiff's second ground challenging the ALJ's RFC finding for failure to discuss the extent of the erosion of the occupational based due to plaintiff's limitations in stooping, crawling

and crouching.

## V.
## RECOMMENDATION

Plaintiff clearly suffers from significant physical problems, and the Court is not unsympathetic to plaintiff's condition.  Plaintiff has presented a persuasive argument for finding plaintiff disabled, but the evidence of record supports the administrative finding of not disabled. THEREFORE, it is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of September 2005.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), <u>and</u> the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).